Good morning. Good morning, Your Honor. May it please the Court. Alice Baer is on behalf of the three named plaintiffs and a putative class of Medicare beneficiaries, and I'd like to reserve three minutes for rebuttal time. Keep your eye on the clock. We'll try to help you. Thank you. Medicare is not supposed to make people think that it will cover health care, that it won't, in fact, cover, but that's what happened to the plaintiffs. They had relied for years on Medicare coverage of a physician-administered injectable drug. It had been covered by Medicare Part B, the general outpatient benefit. It covers things like visits to a doctor's office. Medicare changed course. It determined that the drug was usually self-injected by patients. Part B coverage was discontinued. Medicare beneficiaries could look to the Medicare prescription drug benefit, Part D, instead. The catch was that Medicare did this with no advance notice to beneficiaries. The plaintiffs kept going to get the drug in outpatient settings. They racked up enormous liability before they had any idea that there was a coverage issue. That gets me to my first question. It seems to me that at bottom, it's really a claim for benefits. It seems like if you get your requested injunction that the plaintiffs will ultimately receive benefits in the form of a waiver of liability for past doses, which amounts to a lot of money. Isn't that correct? So this gets at the, are you speaking in terms of the collaterality issue, Your Honor? The reality is how do we square your proffered, irreparable injuries with the possibility that you receive back payment sufficient to compensate you for the harm suffered? That would be with regard to the two named plaintiffs who haven't exhausted their They're placed in the sad category, and I forget, it was like $55,000 apiece or something like that. Yes. Is that right? Yes, and I would first just point out that there's no dispute that the lead named plaintiff, Mr. Beitzel, that the court has subject matter jurisdiction over his fully exhausted administrative claim. We part ways over the scope of the relief he has standing to pursue. But with regard to your question, Your Honor, the relief requested here would be an injunction prohibiting the secretary from imposing or assigning liability in this situation. That is, in a situation where a drug has been or will be added to the self-administered list. But as a result, would your client not receive, if you will, a waiver of the past liability? Right, so that would be the result. And the question there is not a question regarding substantive eligibility for benefits. If we're talking about the issue in terms of whether this is a collateral issue with regard to waiver of exhaustion of administrative remedies for the other two named plaintiffs. That's clearly what you're struggling against, right? Because if you're going to get some money, you have a whole different procedure you have to follow, right? Well, I would say that this is, with regard to those two plaintiffs, the actual issue is not substantive eligibility for benefits, but what notice is due when Medicare discontinues coverage of a drug. And the Briggs case uses that phrase, substantive eligibility. We know the answer to the question of substantive eligibility for benefits here. The answer is no, because Medicare, when Medicare made this determination that the drug is usually self-administered, it excluded coverage from Part B, put it into this excluded coverage category. Now there's another question, liability and notice. That is a separate and distinct question. And I just also wanted to note that money can come or leave, essentially, beneficiaries' pockets, and the issue can still be considered collateral. So, for example, in the Briggs case that I mentioned, the Secretary was enjoined from withholding Social Security from people who were eligible but did not have a representative payee. And in the Harrow case, the court stated that was, quote, not a claim for benefits, but the plaintiff there challenged a policy of demanding up-front reimbursement. In both cases, the Secretary was enjoined from withholding payment for a reason other than eligibility or coverage. So those were collateral issues because the Secretary was being enjoined from withholding for these other reasons. It didn't have to do with substantive eligibility, which is the core area of agency knowledge. Also, we don't have an evasion of the administrative review system here on an issue that is core agency purview. And that's going back to the foundational case of Ringer, where the problem was not the inevitable flow of payment, but an evasion, an attempt to evade the administrative review system. Let me ask you another question. What's your best argument that the legislative act doctrine doesn't apply here? Yeah, so this case is controlled by the Green and Joaquim cases, which involved a change in benefit eligibility rules, but that would have resulted in an arbitrary loss of benefits unless individuals had a procedure so that they could see if they would qualify under the revised rules. And I think this situation is particularly similar to the language that was used in the Joaquim case in the Seventh Circuit, which adopted the reasoning from the Green case. So if I agree, wouldn't we have to conclude that adding STELA or STELARA, if you said correctly, to the SAD list at the max had functionally changed the eligibility requirement for plaintiffs to receive STELA? To receive, I'm sorry? Receive the medication they wanted, STELA. I think it's called STELARA. I'm sorry. Yes, yes. So that, and that certainly was, from the perspective of the beneficiaries, the eligibility rules had changed. They could no longer receive coverage of this medication as they had. And I will just, I would like to, if I may, point to the strikingly similar language in the Joaquim case, where the court found that the foster care families in that case, most if not all, would have qualified for the benefits in that case under the revised rules, very similar to the language that the agency itself used in the Federal Register here. It's included in our addendum at page 5, where it said that when a drug is found to be determined to be self-administered, it is no longer excluded from coverage by Part B, but almost always will be covered by Part D. Very similar situation. So this is a, you know, not a case, this is a case where the individual loss of benefits, as in Green and Joaquim, does raise due process concerns. So, assuming you get over the collateral issue, we go to number two in the Briggs analysis, which is that there is an irreparable injury that can't be remedied by retroactive payments. So here, right now, you have your clients are out money, but it could be cured with retroactive payments. Explain to me why that satisfies the irreparable injury requirement. Understood, Your Honor. Again, this is speaking only to the two named plaintiffs who don't have an exhausted claim. So what we have here is, for example, Ms. Craig with her ALJ hearing. The ALJ found that she is experiencing, quote, a difficult financial situation and mental stress. That's in the record at ER 39. That's an uncontested finding. She also paid $5,000, and she's relying on a patient assistance program for the drug that may not continue. She's alleged her distress and anxiety over this situation that's at ER 39 to 40. And so this meets the standard for it. So why can't it be solved with a retroactive payment? Well, because the ongoing distress, anxiety, difficult financial and mental stress is one of these types of injuries that can't be erased, the entire effect and the experience cannot be erased by retroactive payments, or in this case forgiveness of liability. Why? Because the very experience of going through this with facing enormous liability won't be entirely Excuse me, counsel. With respect, people all the time are compensated in court for similar kinds of injuries in a monetary way. So in response to my colleague's question, you seem to be evading the issue. He's saying, why can't this be taken care of with payments? And I don't think you're answering his question. Well, we don't think this is the typical It can be typical, but it can be satisfied with a payment of money. We actually don't think it's a typical case because of the very large amounts, not typical to owe $40,000 for a medication. The standard here is colorable claim for irreparable harm. And I would also point the court to the City of New York case from the Supreme Court, which talks about the fact that the very ordeal of having to go through the administrative process is something the court should be particularly sensitive to when the plaintiffs are requesting a procedure that they should have been afforded in the first place. And we've also cited the Davis case, a district court case in this circuit, for the fact that these sort of psychological injuries that a person may experience cannot necessarily be erased by the eventual award of benefits later on, or in this case, forgiveness of liability. I would also state that, you know, in regard to this three-factor analysis, just to take one step back on that, the case law counsels that the ultimate decision regarding waiver should be guided by the purposes underlying exhaustion and not solely by mechanical application of the Eldridge factors. And that also comes from the City of New York case, from the Supreme Court, and the Johnson case in this circuit. I think that's particularly applicable here, where the problem is stemming from the agency applying its own policy. It's a policy we've identified in the Medicare Benefit Policy Manual. It is in our addendum at pages 41 to 42, where it says straight out, an advanced beneficiary notice is not required when a denial is based on a drug, on the self-administered drug exclusion. And nonetheless, a beneficiary can be charged. And so this is not a situation where it might make sense for an agency to have a first crack, fix the problem itself, and, you know, correct errors through administrative review. And that, I think, is really the sort of overriding issue here, and really gets at the purposes behind exhaustion, is this is sort of the quintessential futility situation because we have the problem stemming from the agency applying its own policy. And I would say it's the opposite of that Kildare situation, the Kildare situation which talked about an assemblage of individual or errors or irregularities. We have here an announced policy. The Secretary is showing no intention of changing it. And the case law also talks about when the policy being challenged is a directive of the Secretary himself, we can assume that plaintiffs or claimants won't get favorable decisions in the administrative review system. Well, let me ask you this prospectively. What are the injuries for these plaintiffs? Prospectively, the injuries? Okay. So speaking in terms of Article III standing, Your Honor? Yeah. Yeah. So the injury here is ongoing. In terms of Article III standing, there's no dispute that Mr. Beitzel, who has a fully exhausted claim, has an injury that's traceable to the challenge conduct of the Secretary, and that's financial liability that he carries to this very day. And he's asking the court to redress that injury by prohibiting the Secretary from imposing liability in this situation. So this is not like the Lyons case where the plaintiff needed to demonstrate another similar injury. In the future, rather, it's like the Harrow case where the injury was ongoing. Also financial liability in that case. And the court specifically stated there that the plaintiff did not need to demonstrate that she would be injured in the same way in the future. The court said an injunction prohibiting the Secretary from withholding reimbursement payments until after completion of the appeals process would have redressed Harrow's injury. So we disagree with the position of the district court, and I believe of the government, that the relief here could only apply, the requested relief here could only apply to drugs other than Stellara, the drug that the plaintiff was taking. That relief is not, relief in connection with Stellara is not distinct from relief that would apply to other drugs. And that's because we have this continuing present adverse effect, adverse effects that will be remedied by an injunction. And I think the district court didn't regard that possibility of the continuing present adverse effects and was looking instead solely for a future threatened injury. Well, the plaintiffs here weren't notified in advance, so they kept incurring these costs. That's past relief. I'm trying to understand what's, for these plaintiffs, what's the prospective relief. Wouldn't it be better for somebody who's on some other drugs that could be added to the SAD list to be, wouldn't they be better plaintiffs? I'm not sure that I, I think, Your Honor, that I'm not sure I quite agree with the idea that the past, what you're referring to as past relief doesn't also capture the harm that would befall to proposed class members. Am I, the, the, they're on, they have ongoing injuries that stemmed from the lack of notice that would be redressed by prohibiting the secretary from carrying forward with his current policy. So the injunction would essentially say your current policy is unlawful, here are the remedial consequences, and now you have to come up with a, you know, a new way of dealing with this. And that, that would, that would essentially mean that that would, that would remedy the current, the current injury that the plaintiff is, is currently suffering, experiencing, the financial liability that came, that stemmed from the lack of notice, and it would also carry forward for proposed class members when new drugs are added to this list. So I think that that would, that would actually capture both. You said you wanted to save about three minutes. Yes. Do you want to save your time? I would like to, thank you, Your Honor. Very well. All right. Ms. Glynn for, I'm sorry, wrong case. Apologize. Ms. Powell. Good morning, and may it please the Court. Lindsay Powell for the government. To go back to where the Court's questioning started, there are two claims here that are very closely related to each other, and one of those claims, as the question suggested, is a claim for payment under the Medicare statute. And so what plaintiffs are seeking under that claim is under 42 U.S. Code 1395pp, which provides the conditions prerequisite to payment for items and services notwithstanding determination of disallowance. And so their theory is, even though everyone agrees that there is no entitlement to coverage of these drugs anymore under Part B, that they should still get payment of Medicare benefits because they didn't have the right notice. That is a claim for benefits. And their arguments about what processes do, their other claim, is not in any sense collateral to that claim for payment of benefits. The two go part and parcel with each other. Both are fundamentally about whether the plaintiffs had the notice that they say they were entitled to. And so for that reason, the district court was correcting, concluding that the claims that were not exhausted are not eligible for waiver of exhaustion here. That's enough for the Court. The collaterality question is a sufficient basis for the Court to affirm on that ground. But I do want to make one point. But don't you think the futility exception applies here? So the — I mean, it doesn't seem reasonable to me that the agency is going to change its mind. Am I wrong on that? Well, two things, Your Honor. First, for waiver of exhaustion to apply the — No, I understand the other requirements. I'm asking about futility. Yes. So with respect to futility, the — what 1395pp requires — and so, again, this is taking plaintiffs' argument on its terms. This is not, we think, sort of categorically that the statute doesn't apply. But what they are asking the Court to find, what they were asking the agency to find, is that they are entitled to payment of benefits because they lack notice. And another requirement is that the providers lack notice. And so the terms of the statute is that both such individual and such provider did not know and could not reasonably have been expected to know. And those knowledge terms, particularly with respect to the provider, we — those are fact questions that have not been developed. So we have here, in terms of the notice, right, a designated website that the MACS put up these designation determinations. There was a robust comment process here. We know that lots of people, in fact, did have notice about the plan to designate Stellara as usually self-administered. A lot of groups weighed in. There was a fairly long period of time, about a year, between when that notice was provided and when the designation took effect. And so the question whether providers knew or should have known about this designation is absolutely something that the agency could develop if given the opportunity and so defeats the futility point. Well, to — listening to your answer, it doesn't seem that the agency believes at all that there was improper notice. Is that true? That is true, Your Honor. So this is — So why doesn't futility exception apply? That person? Well, in order for — I mean, it seems to me that the agency has made up its mind on this question on notice and on entitlement to benefits. So you're asking us to send it back so that you can say no, basically. The standard is — the inquiry is not so limited, Your Honor. So if you look at a case like Kaiser, even where it was clear that the administrative process would not result in the relief that plaintiffs wanted, it was found that exhaustion would still serve the purpose of that process by allowing the agency to develop the claims and build a record. And so here, for plaintiffs to prevail, you know, assuming the analysis should look as they say, these facts would need to be developed and a finding would need to be made about both in terms of beneficiaries and providers who had what notice when, because if the providers did know or should have known, it affects who's supposed to pay, whether it's Medicare or whether it's the providers themselves. So under their theory, these facts matter, the record matters. And so even if it seems unlikely that the agency would award relief through this process, it's not futile in the sense that exhaustion still serves an important function. Do you agree that the plaintiffs are entitled to still are under Part D? So I do want to — They basically argue that, do you? If I may, I want to step back in answering that. So the Part B and Part D are very separate benefits under Medicare.  And nothing about Part D, its coverage of STELLARA, has changed in this. So Part D coverage of STELLARA always was or wasn't available under your Part D plan, depending on your Part D plan and what that particular plan provides. And the terms of coverage, even if it is covered, vary from Part B coverage. The only thing that has changed here is the Part B coverage. No, I understand that. I just said, do you agree they're entitled to STELLARA under Part D? It would depend on the terms of their plan. And they would be, again, depending on the plan, would have been entitled to STELLARA coverage under Part D all along. That is not a new circumstance. No, I understand that. That results. So if I can distill your answer so I understand it, what you're saying is they were — if Part B had been in place, they were automatically entitled to STELLARA. And if they had eligibility under Part D, you believe there are some suggestions as to whether they meet them or not. Is that right? The — I'm just trying to figure out. I mean, they've said nobody contests that we're entitled to STELLARA under Part D. I'm just trying to find out if you agree with that or not. So it will depend on the individual beneficiary's plan and their coverage. And I'm not aware of the coverage available to each plaintiff. But I think there is some suggestion in their briefing that the eligibility, the availability of Part D coverage somehow changed over the course of these proceedings in a way that's relevant. And so the stepping back I'd like to do, if I may, is trying to fit this to the due process theory. Typically, we talk about due process as protecting against the erroneous deprivation of a benefit. Here, the benefit that changed is Part B coverage of STELLARA. And everyone agrees there is no ongoing entitlement. No amount of notice, process, hearing, showing would establish that plaintiffs — these plaintiffs or anyone else could obtain Part B coverage of STELLARA. That's just not — there's no erroneous deprivation. There's no ongoing entitlement. Perhaps I misunderstood. I thought that until the change was made to add STELLARA to the SAD provision, that it was clear that they were entitled to STELLARA under Part B because they'd been paid all along. Isn't that correct? Yes, that's correct. So what changed? The government changed its mind. Right. And the question seems to be, was adequate notice given? Or you're claiming, is any notice required? Right. And the answer — what I was trying to describe and distinguish this from sort of the typical due process case. So normally we talk about when there is a change. And this is — plaintiffs rely on Green and Joaquim in principle for this. And the changes there were to eligibility requirement for a particular benefit that the plaintiffs had been receiving and urged that they were entitled to continue receiving, notwithstanding the change. Here there is no question that plaintiffs are not entitled to continue receiving Part B coverage. Right? That is the benefit. There was a change to that benefit that applies categorically. It doesn't depend in any way on the particular circumstances of these plaintiffs. So they don't — they don't want a hearing to show their entitlement to Part B coverage. There's no Part B coverage. They say it would have helped us to know about this change so that we could arrange our affairs. We would have made different choices. We wouldn't have used STELLARA. Or they would have applied under Part D. Or we would have — I mean, the issue here is — and you know, you're familiar with medical billing. Obviously, everybody thought that it was going to be covered under Part B because it had before in this case. So they transmitted the claim under Part B. And so, you know, that's the argument in this case, is that nobody knew in time to make a change. And you didn't — as I understand it, you just made the change on a website. You didn't put it in the Federal Register, right? That's correct. Although the — I know it's a prominent website, but that's all you did, right? Well, in a way that was, in fact, effective to lead to a robust comment process. This is the website where these sorts of changes are announced. But the normal claims handling person at a medical clinic is just not going to check the website to see anything's changed, generally speaking. Well, I think — Speaking from experience. I think that's a fact question, but as plaintiffs acknowledge, these are websites that are put up there to inform providers. And so, one, whether that notice is adequate, at least as to providers, I think is a very real question. But I think the Federal Register point is a great one. All the time we accept that Federal Register notice is adequate for changes that broadly affect categories of people. And it's not as though, you know, individuals on the ground are routinely checking the Federal Register to see how their rights are being affected. But it suffices, and so — Correct. Now, let me get to my ultimate question on this. Isn't it the duty of the courts to decide due process and not the agency? Because your argument is, look, there's a fact issue on notice. I take that. But the agency doesn't decide constitutional questions. Courts do. So why isn't this a fact question for the court rather than the agency in the exhaustion process? The way plaintiffs have presented these claims, there is emphatically a claim for benefits. And the exhaustion inquiry says where there's a claim for benefits, you just have to go to the agency first. It then comes to the courts. Our theory doesn't prevent the courts from ultimately deciding these questions.  The odd thing I find about their complaint, and I'm going to ask them about it, I don't see a claim for relief for benefits. I see a claim for prospective relief. I mean, I'm looking at their request for relief. It doesn't include a claim for past benefits. So where does that leave you? Well, to the extent — But you're saying they are asking for past benefits. Their complaint says nothing about it. And there may be a mismatch. I was having some trouble tracking the relationship between the prospective relief sought and how it remedies past harm. It has been and continues to be our position, of course, that the broad prospective relief that seeks, you know, to compel notice as to all future designations of drugs that these plaintiffs don't allege that they take or will affect the harms that they have suffered is not redressable. And so not properly before the court. I do — I worry that I haven't been as clear as I hope to be about the Part B, Part D difference. But the — I think we understand, but go ahead. I just wanted to acknowledge it. It is, of course, unfortunate the way things played out here. It would be frustrating to anyone to have been receiving a benefit and have it covered and then without your realizing to have that coverage not be provided in the same way. That is not ideal. That doesn't mean it has a constitutional dimension. And the fact that there are alternatives that might be available to people in this position, if they have Part D plans, that they could — if they had the Part D plan already, they could submit that for that very same drug, could submit it to Part D potentially. They can certainly switch to it in the future. There are different options. But none of those fits onto the due process analysis and the way these cases discuss. You seem to be saying, if I understand you correctly, that there are lots of people in the country who have claims. And you can't notify everybody. Putting it on the website is adequate. That satisfies due process. Is that your position? That is certainly our position. And then I think my second point is that ultimately the Part D question here is a red herring. The question about notice, when we're talking about the deprivation of a protected entitlement, the deprivation here was as to Part B coverage. And so the analysis is as to Part B. Right. I mean, their argument is that they were denied due process because you didn't give them notice of the changes in Part B. That's the way I take it. Yes. That seems to be a constitutional question for the courts, not the agency. Your reaction is what they're really seeking is a claim for benefits, even though that's not in their complaint. And so, therefore, the agency should have the first crack at it. Am I summarizing it correctly? That's correct, Your Honor. Yes. And where is here the two claims overlap in the way they do? So this is very much unlike Eldridge and unlike Briggs, where the question about process is not adjacent to the question for substantive relief. The entire theory that they should get paid is because of notice. And so the question of notice on the due process side is not collateral in any relevant sense. These two claims are part and parcel with each other. And so all that means is that they have to exhaust. It doesn't mean the court doesn't get to consider it. But it does mean, under the clear precedent of Briggs, that you go to the agency first, and there may be these fat questions, like what notice did both beneficiaries and providers have when? And then it can come to the court after. So the court absolutely can still decide the constitutional question. But I think you've already answered this question. Regardless of what they did with regard to exhausting their administrative remedies, they weren't ever going to win. It is the government's position that they are not eligible for the payment or for the additional notice. But as far as utility goes, it doesn't mean there's still not a record that would need to be developed to support their theory. So it's not just our defense that matters in figuring out whether exhaustion serves a purpose. So the purpose of exhausting administrative remedies is simply to develop a record. It's not that they'd ever have a chance of prevailing. Is that what you're saying? In this case, that's the main function, and that has been credited in case after case by this court as one of the principal functions that exhaustion is supposed to serve, is to allow for that development of a record and consideration  Well, what record would they develop? How's this record going to do? What is it? One of the questions that is not answered by the record so far is what notice providers had or should have had. And under 1395pp, that is, again, under their theory, that is a necessary part of determining whether they would be eligible for payment of benefits here. So are you saying that you think the agency can determine that they were deprived of the right of constitutional notice and therefore entitled to benefit? Because the way I see it playing out is this. Please correct me if I'm wrong. They filed their claim for benefits. You say no. They say we didn't get notice. Well, if you say that's beyond our jurisdiction because that's a due process argument, take it to the court. But, you know, we're going to wait for all the appeals to go through so we can say no, so then you can make the argument to the court. And I don't mean to be facetious, but isn't that the way this plays out? Because the agency is not going to make a due process determination, is it? Again, I think we need to take the claims as they are actually presented by the plaintiffs and what they are arguing. And under the 1395pp, that claim itself, the notice question doesn't necessarily need to have constitutional dimension. It just happens to overlap with their due process claim. But the statute itself doesn't ask whether the notice was constitutionally sufficient. It just says whether both the individual and the provider did not know and could not reasonably have been expected to know. That's a fact question. And so that is the type of thing in the ordinary course. I mean, the agency answers that all the time with other types of waiver of liability questions. So it's not unusual for that to go through. And the fact that the claims are so interlocked here weighs against exhaustion or waiver of exhaustion because the due process claim is not collateral. It's not like in Eldridge where, you know, you have a completely separate fact question about entitlement to disability benefits that's going to turn on presentation of medical evidence and those sorts of issues. That's collateral to the how much process was due. Do you get a pre-deprivation hearing? Here the question of notice is the very basis on which they seek payment from the agency. They say because we didn't know, you should pay for the injections even though they weren't covered under Part B. So I gather, based on your argument and perception, that this is not a claim for, as it were for past benefits, is not one you're capable of settling outside the administrative agency. As in, like, negotiated settlement between the parties? Yes. That's not something I can speak to here, Your Honor. Just asking. Doesn't that get to judge Thomas' question about futility, though? If we send this back, they don't get anywhere. Right? But, again, with so two things. One, if the government is right about collaterality as the district court held, the rest of it doesn't matter, right? That would be, there's no waiver of exhaustion then. With respect to, and there were some questions raised earlier about irreparable harm as well. So some doubt as to the second prong. And then on the third prong on futility, that it is not the only question as to whether the agency is likely to reverse a policy in the course of that adjudication. The plaintiffs have presented a theory for payment of benefits that raises back questions. And those are precisely the types of questions that ordinarily should go to the agency in the first instance. So if they want payment under 1395PP, they need to make certain showings. And those depend on what, knowing what notice both the beneficiaries and the providers had. And all the time those sorts of claims go through. The fact that they are accompanied by overlapping due process claims here just underscores the lack of collaterality and doesn't mean that we should skip over that process. Well, as a practical matter, I mean, we do hear a lot of exhaustion arguments from the government. But what we don't like is to say, okay, go exhaust. And then we're back here two or three years later hearing the same arguments we're hearing today. Although, you know, you made a good presentation, they have as well. But, you know, that is not very efficient in terms of judicial economy. That may call into doubt some of the – Just giving a practical answer, not a legal answer. Yeah, wisdom of the channeling process and the way the doctrine has evolved. But in terms of how the doctrine applies here, we certainly stand by our position. And in terms of these claims, as opposing counsel noted, there is one claim that is fully exhausted and presented for review. There is still the additional threshold question about the scope of the relief that Mr. Beitzel has standing to seek. But he did fully exhaust one claim. And so those merits questions are presented here. And these particular claims can be resolved as far as that goes. Okay. Your time is up. Let me ask my colleague whether there are other additional questions. I think not. Thank you very much. Thank you. Ms. Beers, you have a little bit of time for rebuttal. Thank you, Your Honor. Yes, I'm glad that the counsel for the Secretary brought up the issue of provider knowledge because, in fact, the Secretary's policy has taken that off the table. And it may just help to quickly explain what normally happens under Medicare's existing system is when a beneficiary goes to a doctor, the provider, if the provider expects that Medicare will not cover an item or service, the patient must receive a written advance beneficiary notice, and the patient can then make a decision about whether to assume liability. What's happened here with the policy that the Secretary has crafted here is the Secretary has essentially carved out this situation from the normal notice and liability rules. And it's really particularly unfair because the Secretary is treating this situation as if this is a service that Medicare never covers, so that the protective provisions in the statute simply aren't triggered. So it's something like cosmetic surgery or dental services. So if you, again, pointing to that, the policy in the addendum, pages 41 to 42, provider knowledge doesn't matter. It says because this, you know, if the drug is excluded under self-administered drug exclusion, an ABN is not required. That's it. Provider knowledge doesn't come into the picture. Provider knowledge is actually taken out of the picture. Provider may nonetheless charge the beneficiary. And I think that becomes very clear in the First Amendment complaint. You look at what happened with Ms. Craig in her ALJ hearing. That's at ER 39, I believe, where the ALJ said, I logically assumed that the informed the patient of the non-coverage. She went back and looked at the policy. Under this policy, I was constrained and I had to find the beneficiary liable. There were no protections. So this is actually a clean legal issue, and provider knowledge has been taken out of the picture. And so as for the statute, which is in our Addendum 3, where it talks about beneficiary or provider knowledge, in Subsection B, which is at Addendum 4, it talks about cases where, you know, the provider did not know. So these are not – this is really – under the policy here, that's just off the table. And there's a clean legal issue, and there's no reason to assume that the Secretary would change this. And that really is the root of the problem here, that the fact that the provider knew, there's no obligation to tell the patient. So are you not asking for reimbursement of the past claims? Not asking for reimbursement? Right. The claim is for waiver of liability. It's that this – No, your complaint only speaks of prospective relief. In answer to, I believe, one of Judge Smith's questions, you said, well, of course, they're reimbursed. And their argument is, look, if it's a claim for reimbursement, you've got to exhaust it. So are you asking for reimbursement or not? We're asking that liability be waived. So if I misspoke before, it would be the application, the enjoyment that the court would only be enjoining the Secretary from assigning liability, and then that would be applied to the plaintiff. So their liability would be forgiven. Right, but if you're not asking for reimbursement for past claims, how do you satisfy the irreparable injury portion of this? Because your argument on irreparable injury was it's causing financial harm. And you're relying on, then, the denial of the past claims, not prospective. I would say that our argument on irreparable injury for collaterality is actually relying on the psychological anxiety and stress that's being caused. Because they're not getting reimbursed. Because they're not getting reimbursed, partly because they're not getting reimbursed because of the fear of collection efforts that Ms. Goldstein has. But that is based on. Has alleged. And the possibility of not getting the drug again in the future for Ms. Craig. She had terrible symptoms when she had a gap in coverage before. And, again, also being sensitive to the fact that this is a procedural claim. So that's for collaterality. Any additional questions by my colleague? No, no, thank you. All right, thanks to both counsel for your argument. We appreciate it. Thank you, Your Honors. The case of Beitzel v. Becerra is submitted.
judges: THOMAS, SMITH, Rayes